EDWARD H. GILLETTE, Appellant, v. THOMAS MEREDITH.

**Estoppel.** A director in a corporation, who acquiesces in the acts of other directors in urging and inducing a third person to purchase a mortgage executed by the corporation, to prevent its foreclosure, is estopped as against such purchaser to deny the validity of the mortgage.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

TUESDAY, OCTOBER 12, 1897

ACTION to enjoin the foreclosure of defendant's mortgage executed by the Farmers' Tribune Company. From a decree dismissing the plaintiff's petition, he appeals.— *Affirmed.*

*C. C. Cole* for appellant.

*Mackenzie & Dewey* and *Read & Read* for appellee.

LADD, J.—A newspaper known as the *Iowa Trib-une* was established by J. B. Weaver and E. H. Gillette, and then transferred to the Iowa Tribune Publishing Company. Afterwards, the property of this company was sold to the Farmers' Tribune Company, a part of the consideration being the assumption of all the indebtedness of the former company, including certain notes of Weaver and Gillette to S. S. Gillette, which the Iowa Tribune Publishing Company had agreed to pay. Under a decree in an action for divorce, Gillette became owner of the indebtedness on these notes, and, as such creditor of the Farmers' Tribune Company, instituted this action to enjoin the foreclosure of the defendant's mortgage. This mortgage appears to have been executed by said company to F. H. Hunter, October 25, 1892, securing three notes, amounting to two thousand, four hundred and seventy-eight dollars and forty-four cents. Gue had a claim against the company of one thousand, two hundred and sixty-three dollars and thirty-three cents, and to him Wooster assigned his claim of seven hundred and three dollars and eleven cents, Roe his of four hundred dollars, and Scott his of one hundred and four dollars and eighty cents. All these were transferred to Hunter, who thereupon demanded payment, and received the notes and mortgage in settlement. The plaintiff insists that only four of the nine directors were present at the meeting authorizing the execution of the mortgage, which covered all the property of the company, and that it had its inception in fraud, and was without consideration. In the view we take of the case, it is not necessary to inquire into the validity of the indebtedness, or whether

all requirements were observed in giving the mortgage. It is enough to say that the records of the company show that five of the nine directors were present ordering the making of the notes and mortgage, and the defendant purchased them without any notice whatever of the fraud alleged or want of consideration, if such there was, or of the fact that Hunter was not the unqualified owner. The defendant pleads that plaintiff is estopped from questioning the validity of his mortgage, and the evidence fully sustains the plea.

When the first note became due, Hunter began foreclosure proceedings, and the defendant, as one of the directors, was importuned by at least four other directors to purchase the mortgage, and avoid foreclosure. The defendant lived at Atlantic, and Wooster, to induce him to part with his money, labored with him two days and a night without avail. Scott and Roe made the same attempt, only to fail. Weaver, with one of these, interviewed him, with no better results. Finally, he was telegraphed to come to Des Moines, and, by the representations of the four parties named, all of whom were directors of the company, was induced to buy and take an assignment of the mortgage. Gillette, who was also a director, knew of the efforts being put forth and the purpose had in doing so, and, as he says, acquiesced in what the rest did. He had an interest other than director and creditor, for, under an agreement with the company, he and Weaver had recently sold a large amount of stock on their representation that it was a good investment, and a foreclosure "would cut out all these parties" purchasing. He testifies that "the situation was extremely distressing to us, and therefore the effort to get Col. Meredith to purchase that mortgage to prevent its foreclosure." He afterwards admitted to Meredith "having told them to go and get five thousand dollars of you to pay those mortgages off, and put that paper on its feet." At a meeting

of the stockholders, in November, 1892, after the execution of the mortgage, and before its purchase by Meredith, Gillette being present, a resolution was adopted unanimously ordering the directors, by mortgage or otherwise, to liquidate the indebtedness of the concern in whole or in part. But the plaintiff says he did not know of the defects inhering in the mortgage until shortly before this action was begun, sixteen months afterwards. He heard of the giving of the mortgage, however, a few days after its execution, and says he was astonished by the information. By the exercise of ordinary diligence, he might have known all the circumstances connected with the mortgage, and as, in the capacity of director, he was charged with the protection and care of the company's property, he ought to have learned these before encouraging the purchase of the security. The plaintiff insists that he sent no one to Meredith, but the evidence shows that he was fully informed of what the others were doing, and fully acquiesced therein, and encouraged every effort to induce Meredith to make the purchase, and was very anxious for him to do so. He was willing to stand by, as he testifies, and see Meredith put his money into an enterprise that he knew was ruined a year before, for he "wanted to see that paper rise like an eagle out of its ashes." The defendant having acted in such complete harmony with the wishes and aspirations of the plaintiff, and having been induced to purchase the mortgage by the efforts and representations of the four directors, in all of which the plaintiff fully acquiesced and agreed, he will not now be permitted to question the transaction or the title to the property purchased.— AFFIRMED.